BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE BRANDYWINE COMMUNICATIONS TECHNOLOGIES, LLC PATENT LITIGATION | § § § § |

MDL No. 2462

**REPLY IN SUPPORT OF PLAINTIFF BRANDYWINE COMMUNICATIONS TECHNOLOGIES, LLC'S MOTION TO TRANSFER TO THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

### I.  INTRODUCTION

Consolidating this case makes sense. Respondents would have 21 different courts[1] manage separate discovery and claim construction proceedings concerning the same patents asserted against the same basic DSL services that implement overlapping standards, using equipment from overlapping suppliers and that allegedly implicate overlapping licenses. Brandywine's motion to transfer for centralized proceedings should be granted.

### II.  TRANSFER IS APPROPRIATE AND NECESSARY TO PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE CASES

Of the three statutory requirements for transfer, Respondents dispute two, namely: whether the actions involve one or more common questions of fact; and whether pretrial consolidation would promote the "just and efficient conduct" of such actions and be for "the convenience of parties and witnesses."[2] *See* 28 U.S.C. § 1407(a). Both requirements are met.

---

[1] A revised schedule of actions is attached as Exhibit M.
[2] The action is indisputably pending in more than one district.

1

A. **The Common Factual Questions Are Sufficiently Complex, and the Accompanying Discovery Will Be So Time Consuming, as to Justify Transfer Under Section 1407**

1. **The Cases Involve Complex, Common Questions of Fact**

It is well-settled that "transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *E.g.*, *In re Maxim Integrated Prods., Inc., Patent Litig.*, 867 F. Supp. 2d 1333, 1334 (J.P.M.L. 2012), *citing In re Rembrandt Techs., LP, Patent Litig.*, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007). Nevertheless, this case presents substantial common and complex factual questions that warrant centralization.

First, the cases involve the same six patents. Thus, as the Panel has repeatedly observed, the actions will share substantial background questions of fact concerning numerous anticipated issues regarding the interpretation, infringement, validity, and enforceability of the patents-in-suit and implicating factual issues concerning such matters as the technology underlying the patents and accused products, prior art, priority, and claim construction. *See, e.g.*, *In re Unified Messaging Solutions LLC Patent Litig.*, 883 F. Supp. 2d 1340, 1341-42 (J.P.M.L. 2012); *In re Bear Creek Techs., Inc., ('722) Patent Litig.*, 858 F. Supp. 2d 1375, 1379-80 (J.P.M.L. 2012); *In re Phoenix Licensing, L.L.C., Patent Litig.*, 536 F. Supp. 2d 1373, 1374 (J.P.M.L. 2008); *In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005).

Second, the cases involve overlapping products. For example, at least three Respondents purport to simply resell Defendant AT&T's products and services. *E.g.*, Dkt. No. 58 at 2 (Corporate West); Dkt. No. 71 at 9 (IKANO); Dkt. No. 72 at 2 (DB Solutions). In those cases, the factual issues concerning infringement (which will in turn affect terms selected for claim construction) will be virtually identical between the reseller and AT&T.

Third, the cases involve overlapping suppliers.  For example, in addition to the resellers who identify AT&T as their common supplier, several Respondents identify Broadcom Corporation as an indirect supplier.  *See* Dkt. No. 57-1 at 1 (Loretto); Dkt. No. 67 at 12-13, ¶ 4 (HickoryTech); Dkt. No. 71 at 8-9 (IKANO).  Overall, Brandywine understands from existing discovery responses that at least 20 suppliers are involved.  In granting Brandywine's motion to stay pending a decision by this Panel, the *CenturyTel* court acknowledged "the burdens on third parties with relevant evidence common to all of the cases, such as the inventors *and equipment suppliers to the Defendants*."  Exh. N at 2 (emphasis added).  Centralizing the cases will alleviate this burden by preventing duplicative discovery on those many equipment suppliers.

Fourth, the cases involve overlapping standards.  For example, both the '328 and '657 patents implicate the ITU-T G.992.3 and G.992.5 standards used in ADSL2 and ADSL2+, respectively, which are widely implemented in residential DSL services.  *Compare* Dkt. No. 67 at 58 (identifying other DSL standards).  The cases will thus present complex and common questions concerning the mandatory and optional features of those standards, which are common to most, if not all, defendants.  The implication of common standards distinguishes, for example, *In re Select Retrieval, LLC, ('617) Patent Litig.*, 883 F. Supp. 2d 1353, 1354 (J.P.M.L. 2012), in which it was unclear "to what extent infringement allegations will be common to the defendants across these actions."

Finally, the cases will involve overlapping licenses.  For example, in contrast to *In re Genetic Techs. Ltd. ('179) Patent Litig.*, 883 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012), and *In re Allen Compound Bow Patent Litig.*, 446 F. Supp. 248, 249-50 (J.P.M.L. 1978), each of which concerned defenses that were particular to an individual defendant, Respondents' oppositions make clear that at least some Respondents will rely on the *same license* to RPX.  *See, e.g.,* Dkt.

No. 57-1 at 1 (Loretto); Dkt. No. 69 at 6 ("at least two" Defendants); Dkt. No. 71 at 8 (IKANO). Thus, the cases present common questions of fact and law concerning the interpretation and application of commonly asserted licenses.

For at least these reasons, common questions of fact predominate the cases, and centralization is necessary and appropriate to avoid inconsistent pretrial rulings and duplicative discovery.

### 2. The Procedural Disparities Among the Cases Do Not Preclude Centralization

Respondents argue that centralization is inappropriate because the *CenturyTel* and *AT&T* cases are more advanced than the remaining cases. *E.g.*, Dkt. No. 57 at 3-4 (Loretto); Dkt. No. 58 at 5 (Corporate West); Dkt. No. 60 at 4 (Union River); Dkt. No. 62 at 8 (Peak). However, *CenturyTel* and *AT&T* are not so advanced that they cannot benefit from centralization.[3] Discovery remains open in both cases, and both cases have been stayed pending a decision by this Panel (the *AT&T* case having been recently stayed *sua sponte*). Exhs. N-O. Importantly, significant factual discovery is outstanding in each case. No depositions have been taken in

---

[3] This distinguishes the cases relied upon by Respondents, which cases were far more advanced than *CenturyTel* or *AT&T*. *Cf. In re Louisiana-Pacific Corp. Trimboard Siding Mktg., Sales Practices & Prods. Liab. Litig.*, 867 F. Supp. 2d 1346, 1347 (J.P.M.L. 2012) (nonexpert fact discovery "substantially completed"); *In re Telecomms. Providers' Fiber Optic Cable Installation Litig. (No. III)*, 802 F. Supp. 2d 1364, 1365 (J.P.M.L. 2011) (centralization sought only to approve statewide class action settlements); *In re JPMorgan Chase & Co. Fair Labor Standards Act (FLSA) Litig.*, 729 F. Supp. 2d 1354, 1355 (J.P.M.L. 2010) (tentative nationwide settlement reached); *In re Telecomm. Providers' Fiber Optic Cable Installation Litig.*, 199 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) (discovery completed or nearly completed and class action settlement agreement reached); *In re Eli Lilly & Co. "Oraflex" Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984) (one action already tried and several others scheduled for trial within six months); *In re Rely Tampon Prods. Liab. Litig.*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982) (pretrial proceedings complete and trial imminent in at least two actions); *In re Am. Fin. Corp. Litig.*, 434 F. Supp. 1232, 1233-34 (J.P.M.L. 1977) (discovery completed, pretrial order entered, and trial imminent); *In re Bourns Patent Litig.*, 385 F. Supp. 1260, 1261 (J.P.M.L. 1974) (discovery on common issues complete and trial imminent in one case).

either the *CenturyTel* or *AT&T* case. Thus, every deposition of the third parties mentioned above remains outstanding and can benefit fully from centralization. Finally, no expert discovery has taken place in either case. Thus, this case is similarly situated to *TR Labs*, in which the Panel recently explained:

> It is frequently the case, however, that actions transferred to an MDL are in somewhat varying procedural postures. *E.g.*, [*Unified Messaging*, 883 F. Supp. 2d at 1342] (rejecting argument of plaintiff patent licensee that two "more procedurally advanced" actions should be excluded from MDL, explaining that overall efficiencies to be gained would offset any delay resulting from centralization). Here, the record shows that the fact discovery period in the action remains open, and little, if any, expert discovery has taken place. The transferee judge possesses broad discretion to formulate a pretrial program that accounts for any significant differences among the subject actions and ensures that duplicative activity is minimized or eliminated.

*In re TR Labs Patent Litig.*, 896 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012).

Respondents' speculative fears, then—ranging from a "reset of all defendants" to the denial of an opportunity to participate in claim construction—are unfounded. *See, e.g.*, Dkt. No. 67 at 7; Dkt. No. 71 at 11. As in *TR Labs*, the transferee judge will have broad discretion to fashion one or more schedules that will allow each defendant to fully participate in discovery and claim construction proceedings while minimizing the impact to *CenturyTel* and *AT&T*. *Id.*; *see also Bear Creek*, 858 F. Supp. 2d at 1377 ("We choose instead to leave the degree of coordination or consolidation of involved actions to the sound discretion of the transferee judge.").

### 3. No Practical Alternatives to Transfer Exist

Finally, Respondents argue that centralization "should be the last solution after considered review of all other options." *E.g.*, Dkt. No. 68 at 14, *citing In re Dollar Tree Stores, Inc.*, 829 F. Supp. 2d 1376 (J.P.M.L. 2011); *In re Best Buy Co. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). But, no other options are practicable in

5

this case. *Cf. Best Buy*, 804 F. Supp. at 1378 (all parties amenable to Section 1404(a) transfer). Respondents cite myriad cases electing "alternatives to transfer," but those cases invariably involve a small number of actions, courts, or counsel.[4] As the Panel has repeatedly explained, "where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization." *Ocala Funding*, 867 F. Supp. 2d at 1332, *citing In re Transocean Ltd. Secs. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). In

---

[4] *In re Droplets, Inc. Patent Litig.*, No. 2403, 2012 WL 6554422, at *1 (J.P.M.L. Dec. 12, 2012) (six actions in three districts); *Genetic Techs.*, 883 F. Supp. 2d at 1338 (six actions before four judges); *Louisiana-Pacific*, 867 F. Supp. 2d at 1347 (noting "overlap" in counsel and "limited number of actions"); *In re Ocala Funding, LLC, Commercial Litig.*, 867 F. Supp. 2d 1332, 1332 (J.P.M.L. 2012) (four actions in two districts, three of which already "extensively coordinated"); *In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1369 (J.P.M.L. 2012) (seven actions in two districts, two of which already consolidated); *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1377 (J.P.M.L. 2012) (13 actions in three districts); *In re Plavix Prods. Liab. Litig.*, 829 F. Supp. 2d 1378, 1378 (J.P.M.L. 2011) (noting "limited number of actions and relatively few involved counsel"); *Dollar Tree*, 829 F. Supp. 2d at 1376-77 (four actions in two districts; most plaintiffs shared counsel); *In re Prop. Assessed Clean Energy (PACE) Programs Litig.*, 764 F. Supp. 2d 1345, 1346 (J.P.M.L. 2011) (six actions in three districts); *In re Student-Athlete Name & Likeness Litig.*, 763 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) (9 of 11 actions already consolidated); *In re Boehringer Ingelheim Pharms., Inc., Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (two plaintiffs' counsel and one defense counsel in four actions); *In re Plastic Injection Molding Mfg. Process ('184) Patent Litig.*, 706 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) (27 of 29 actions already coordinated before a single judge); *In re Commonwealth Scientific & Indus. Research Org. Patent Litig.*, 395 F. Supp. 2d 1357, 1358 (J.P.M.L. 2005) (three actions in two districts); *In re Indian Tribes Contract Support Costs Litig.*, 383 F. Supp. 2d 1380, 1381 (J.P.M.L. 2005) (three actions in two districts); *In re Sumatriptan Succinate Patent Litig.*, 381 F. Supp. 2d 1378, 1378 (J.P.M.L. 2005) ("essentially" two actions in two districts); *In re Qwest Commc'ns Int'l, Inc., Secs. & "ERISA" Litig.*, 395 F. Supp. 2d 1360, 1361 (J.P.M.L. 2005) (only one action outside the District of Colorado); *In re Advantage Investors Mortgage Corp. Mortgage Funds Litig.*, 268 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (two actions); *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1351 (J.P.M.L. 1980) (four actions in two districts); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 243 (J.P.M.L. 1978) (three actions); *In re Wyeth Patent Infringement Litig.*, 445 F. Supp. 992, 993 (J.P.M.L. 1978) (noting "minimal number of actions"); *Am. Fin. Corp.*, 434 F. Supp. at 1232 (four actions in two districts); *In re Truck Accident Near Alamogordo, N.M., on June 18, 1969*, 387 F. Supp. 732, 734 (J.P.M.L. 1975) (four actions in two districts).

this case, there are 37 actions pending in 21 courts and involving over 20 sets of counsel. Informal coordination is impractical, so centralization is warranted.[5]

### B. Centralization Would Promote the "Just and Efficient Conduct" of the Actions and Be for "the Convenience of Parties and Witnesses"

#### 1. Considering the Litigation as a Whole, Centralization Is Just, Efficient, and Convenient

Respondents assert that centralization is not convenient because it will force the Defendants to litigate outside their home District. *E.g.*, Dkt. No. 62 at 6-7; Dkt. No. 64 at 6-7; Dkt. No. 68 at 14. The Panel long ago rejected this argument in *In re Library Editions of Children's Books*, 297 F. Supp. 385, 386 (J.P.M.L. 1968), explaining:

> Of course it is to the interest of each plaintiff to have all of the proceedings in his suit handled in his district. But the Panel must weigh the interests of all the plaintiffs and all the defendants, and must consider multiple litigation as a whole in light of the purposes of the law . . .
>
> The objective of the legislation is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the "just and efficient conduct" of such actions . . . The basic purpose of assigning multiple litigation to a single judge is to provide for uninterrupted judicial supervision and careful, consistent planning and conduct of pretrial and trial proceedings that will eliminate or reduce conflict and duplication of effort.

*Id.*

In this case, one centralized proceeding is undoubtedly more efficient than 37 independent ones. One centralized proceeding is more efficient for the courts, which will not be burdened with duplicative litigation. One centralized proceeding is more efficient for the witnesses, who will not be burdened with duplicative discovery requests. One centralized proceeding is more efficient for Brandywine, who will proceed with presumably centralized scheduling and discovery orders. And, one centralized proceeding may even be more efficient

---

[5] G4 suggests sharing deposition transcripts, but this "solution" does not allow all parties to examine the witness. *Cf.* Dkt. No. 70 at 5 n.3.

for the Defendants, who will have the opportunity (though not the obligation) to divide work as they see fit.

### 2. Brandywine's Prior Settlements Do Not Preclude Centralization

Respondents also argue that centralization is not warranted because Brandywine has dismissed prior Defendants in this and other cases. *E.g.*, Dkt. No. 57 at 5; Dkt. No. 62 at 7-8; Dkt. No. 65 at 6. However, Brandywine has approached each Defendant concerning settlement, and yet, after five months or more, 37 cases remain, and numerous Defendants have declined to further pursue settlement discussions. Thus, in contrast to *In re ArrivalStar*, 802 F.Supp.2d 1378, 1379 (J.P.M.L. 2011), centralization will not thwart the orderly resolution of these cases. Moreover, as IKANO acknowledges, the district courts are now and will soon be "expend[ing] significant resources" on these cases, which further distinguishes this case from *ArrivalStar*. *Compare* Dkt. No. 71 at 8 *with ArrivalStar*, 802 F. Supp. 2d at 1379 ("none of the actions thus far appear to have required significant judicial attention"). The Panel should grant centralization to alleviate this burden on the court system.

### 3. The AIA Does Not Preclude Transfer

Finally, Respondents argue that the America Invents Act ("AIA") counsels against transfer. *E.g.*, Dkt. No. 64 at 10, *citing Maxim*, 867 F. Supp. 2d at 1335 ("the AIA's right to separate trials should be taken into account when making the decision to centralize a given litigation"). The *Maxim* Panel went on, however, to explain:

> While the AIA changed the landscape of patent litigation—particularly the filing of actions against multiple unrelated defendants and the right to a separate trial when defendants are only accused of violating the same patent—it does not follow that the mere possibility of factual disputes regarding a particular invalidity defense or the infringement of a particular product that might need to be presented to a jury (or juries) is sufficient to deny centralization of actions otherwise involving common factual questions. *Nor should such a determination automatically trump the pretrial efficiencies (notably in having a single judge*

> *construe the patent's claims*, *as opposed to five judges in various districts) that can be gained from centralizing this litigation.*

*Id.* (emphasis added). In this case, the pretrial efficiencies justify centralization, especially in view of the common factual background.

### III.   THE MIDDLE DISTRICT OF FLORIDA IS THE MOST APPROPRIATE VENUE, BUT VENUES IN THE CENTRAL UNITED STATES MAY ALSO BE CONVENIENT

As explained in Brandywine's opening brief, the Middle District of Florida is the most appropriate transferee district because Judge Honeywell, having conducted a *Markman* hearing and issued a claim construction order,[6] is the most familiar with the issues in this litigation and because most of the identified third-party witnesses (i.e., the inventors) reside in that District. *Compare TR Labs*, 896 F. Supp. 2d at 1338 (judge who had conducted a *Markman* hearing and recently issued an extensive claim construction order was "clearly the best choice to serve as transferee judge"); *Phoenix Licensing*, 536 F. Supp. 2d at 1374 (transferring cases to district in which inventor resided).

Predictably, many Respondents accuse Brandywine of "forum shopping," and nearly all Respondents instead propose the Northern District of California—a curious choice for Windstream and Consolidated, for example, who are based in Arkansas and Illinois, respectively. *E.g.*, Dkt. No. 64 at 2; Dkt. No. 66 at 1; Dkt. No. 63 at 1. The Northern District of California, however, has significant drawbacks. First, the Northern District of California has a crowded docket—an estimated 32.7 months median time to trial (compared to 21.7 months in the Middle District of Florida). *Compare In re Transdata, Inc., Smart Meters Patent Litig.*, 830 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011) (emphasizing "more favorable" docket conditions than other

---

[6] Notably, because the *AT&T* case has been stayed pending a decision by this Panel, Judge Honeywell is the only judge who will have this familiarity with the patents. Exh. O.

proposed forums) *with* Exh. P at 3-4.  Second, the Northern District of California is not convenient for the inventors in Florida and for the numerous parties in the Central and Eastern United States.  Respondents make much of the order transferring the *AT&T* case to the Northern District of California, but that order considered only the convenience of the parties and witnesses in the *AT&T* case—not in the 36 other pending cases.  Moreover, different considerations underlie Section 1404(a) and Section 1407.  *Am. Fin. Corp.*, 434 F. Supp. at 1234.  Thus, the Northern District of California is far from ideal.

Respondents NATCO and American Networks propose the Northern District of Texas because:  (1) it is a geographically central location; (2) it includes two major airports; (3) it is experienced in complex and multidistrict litigation; (4) it is participating in the Patent Pilot Program; and (5) it is conveniently located to Brandywine's counsel.  Dkt. No. 65 at 11.  If the Panel rejects the Middle District of Florida, Brandywine agrees that the Northern District of Texas would be appropriate.  In fact, using AT&T's collective method for calculating flight distances, the Northern District of Texas is nearly 13,000 miles roundtrip closer to the Defendants than is the Northern District of California.  Exh. Q.  And, the Northern District of Texas enjoys a relatively uncongested docket (19.9 months median time to trial).  Exh. P at 1.

Other Central U.S. forums in which an action at issue is pending (such as the Western District of Arkansas) would have similar benefits.  *See* Exh. Q (over 15,000 fewer miles roundtrip to Harrison, Arkansas than to Oakland, California); Exh. P at 2 (18.0 months median time to trial).

## IV. <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Brandywine's opening brief, pursuant to 28 U.S.C. § 1407, Brandywine respectfully requests that the Panel transfer the actions listed on

Exhibit M and pending outside the Middle District of Florida to the Middle District of Florida for coordinated or consolidated proceedings before Judge Honeywell or, alternatively, to an appropriate Judicial District in the Central United States.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  June 14, 2013 | /s/ Lei Sun<br>Lei Sun<br>Cal. Bar No. 251304<br>lsun@farneydaniels.com<br>FARNEY DANIELS PC<br>800 S. Austin Ave., Suite 200<br>Georgetown, TX  78626<br>Telephone:  (512) 582-2828<br>Facsimile:  (512) 582-2829<br><br>*Counsel for*<br>*Brandywine Communications Technologies, LLC* |