UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: BRANDYWINE COMMUNICATIONS TECHNOLOGIES, LLC, PATENT LITIGATION

MDL NO. 2462

Portland, ME
July 25, 2013
11:44 A.M.

TRANSCRIPT OF HEARING

PRESIDING:

JUDGE JOHN G. HEYBURN, II, Chairman

JUDGE KATHRYN H. VRATIL

JUDGE MARJORIE O. RENDELL

JUDGE PAUL J. BARBADORO

JUDGE CHARLES R. BREYER

JUDGE LEWIS A. KAPLAN

JUDGE SARAH S. VANCE

Court Reporter: Maureen Lockhart-Wagner, RMR
The Reporting Group
177 Gray Road
Falmouth, ME 04105
(207) 797-6040

Proceedings record by mechanical stenography
Transcript produced by computer

APPEARANCES:

For Brandywine Communications Technologies, LLC:

Timothy Devlin, Esq.
Farney Daniels PC
Wilmington, DE

For G4 Communications Corp., and Loretto Communication Services, LLP:

Timothy R. Shannon, Esq.
Verrill Dana, LLP
Portland, ME

For AT&T Corp., SBC Internet Services, Inc., Corporate West Computer Systems, Inc., MegaPath Inc., and IKANO Communications, Inc.:

Daniel S. Young, Esq.
Kilpatrick Townsend Stockton LLP
Denver, CO

**PROCEEDINGS**

JUDGE HEYBURN: Thank you very much. Next is Brandywine Communications Technologies Patent Litigation. There are three arguments.

Mr. Devlin, four minutes and two minutes of rebuttal; is that right?

MR. DEVLIN: That's right, your Honor. Thank you.

May it please the Court, I'd like to focus on two issues. One has to do with the relationship of these parties in these cases and the third parties that will be involved in discovery and how that really makes this a particularly amenable case for centralization. The second issue is about the timing of some of the existing cases because I think that came up in a briefing, and I'd like to address a couple of points related to that.

In terms of the relationship of the parties and the general landscape of the case, this is a patent infringement case. There are six patents in play. It's the same six patents asserted in every case throughout the country. There remain about 35 defendants right now throughout the country in about 20 different courts throughout the country. The vast majority -- as in many patent cases -- in fact, in more than most patent cases, the issues of validity are essentially common to all defendants. Issues of claim structure are common to all defendants. And in this case many of the issues of infringement

are common to all of the defendants, partly because the patents in the case relate to networking equipment protocols as they've been applied against DSL technology, provision of internet over DSL. And because of that, there are a number of technical standards that are in play according to the patents; and those technical standards will be, of course, consistent from case to case. And in addition, this gets to the parties and third parties. All of the parties that are defendants in the cases are suppliers of DSL. They use, they operate, they sell equipment to provide DSL services to residential and business customers. All of them purchase that equipment from a number of third-party suppliers. There are about 20 that we know of whose equipment is relevant, and there are probably others that we'll see as we get further into the discovery with more of the defendants. There may be ultimately 25 or 30 different equipment suppliers, but we know of least about 20 whose equipment is at play. And they're a fixed universe of suppliers. Every one of those third-party suppliers is going to be the subject of third-party discovery -- a set of subpoenas, documents, depositions. And that's something that should only happen one time. It makes no sense for every one of those suppliers to be subject to separate rounds of depositions in 35 different lawsuits throughout the country.

JUDGE BREYER: So you're recommending it be in Florida, Judge Honeywell?

MR. DEVLIN: That's correct, yes.

JUDGE BREYER: And Judge Honeywell has already had the market hearings?

MR. DEVLIN: That's correct, your Honor.

JUDGE BREYER: So what about those people who haven't participated in the market hearings?

MR. DEVLIN: Well, the market -- the ruling is out there. So there are really two -- I guess, two different or three different possibilities. One is that you can have 20 different judges throughout the country having separate market hearings and issuing potentially conflicting rulings, all of which are in light of the existing market, whether they look to it for guidance on not look to it for guidance for any particular reason. That's the worst case scenario.

JUDGE BARBADORO: Are you suggesting Judge Honeywell, frankly, because he made marketing rulings and you like those rulings, and you want all the cases to go to him? Is it wait and see and get a good judge who gives good rulings on marketing, and then move all of your cases to him on a centralization motion?

MR. DEVLIN: That's not the intention here, your Honor.

JUDGE BARBADORO: It's just a coincidence?

MR. DEVLIN: It is a coincidence. The impetus for the timing of these motions was actually driven by discovery. When

we started to send out subpoenas ourselves and have the inventors receive subpoenas, it really drove home the issue of the problem that the third parties face here. Judge Honeywell issued an order on claim construction, and that was both positive for us in some ways and negative for us in some ways; and I think the defendants would say that as well. She does have experience with the technology now, and has put a lot of time and effort in, I think, to learning the different technologies of the cases. The hearing for the marketing was approximately six or seven hours, so she put a lot of time --

JUDGE BARBADORO: If we were to centralize but inclined to send it somewhere else, do you have an alternative suggestion?

MR. DEVLIN: We've suggested -- some of the defendants have suggested a central -- when I say central, I mean geographically central location in the Northern District of Texas. We would have no objection to that. It does make things convenient. A lot of defendants have suggested the Northern District of California, in part because they expected the judge in that case to also go through a market proceeding. In the midst of the briefing for this procedure --

JUDGE BREYER: That's off.

MR. DEVLIN: That's off. The judge sua sponte canceled that hearing, and so that case and the Florida case are now stayed pending resolution of this.

JUDGE BREYER: Would sending it to Florida delay or impede the litigation now in the -- before Judge Honeywell?

MR. DEVLIN: I think the answer is yes. We've stayed that case by agreement with the defendant there which is Century Tel, and we would expect that that case would sort of be reset on the schedule to accommodate issues of marketing and other things so that we can coordinate all of the discovery with the third parties. So we had a trial date in that case. I think it was February of next year. And we understand that that will be pushed back, and we think that is the appropriate thing to do in light of the vast efficiencies that will take place if we can centralize the cases.

JUDGE HEYBURN: You mentioned earlier there were 20 third-party suppliers; is that right?

MR. DEVLIN: That we know of now based on discovery responses we've received.

JUDGE HEYBURN: Are there lawsuits against those?

MR. DEVLIN: No. The suppliers -- the lawsuits are pursuing against the providers of the services so companies likes AT&T, Century Tel, MegaPath, these are all large or regional DSL providers; and there are also some smaller or local suppliers that are defendants. So they're all businesses or companies in the business of providing DSL services to residential and business customers. And the suppliers are -- I guess -- I suppose we could have sued the suppliers in some

instances. But some of the patents actually have to do with interrelation between pieces of equipment between multiple suppliers and the actions that the companies that provide DSL do when they set up their systems in terms of how the different lines are coordinated among different customers. I could talk a lot more about it, but you probably don't want to hear it.

JUDGE HEYBURN: But legally, who is liable in the first instance for the patent violations, what type of entity?

MR. DEVLIN: So the -- the providers of the services are direct infringers; and they are and should be liable. Of course, that's subject to us proving our case; but they are direct infringers of the patents and would be liable. There may also be issues of inducement. Most of the suppliers -- some of them could be direct infringers of some of the patents. Some of them could be liable for inducement of some of the patents. But it's very complex when you look at the supplier universe and the provider universe.

JUDGE HEYBURN: But you've sued all of the providers.

MR. DEVLIN: We've sued the providers, exactly.

JUDGE HEYBURN: Thank you.

MR. DEVLIN: Thank you, your Honor.

JUDGE HEYBURN: Mr. Shannon. Which group are you representing?

MR. SHANNON: Your Honor, Tim Shannon. I'm counsel of record for two of the defendants.

JUDGE HEYBURN: In what category are they?

MR. SHANNON: All opposing centralization.

JUDGE HEYBURN: I know. But are they direct -- are they providers?

MR. SHANNON: Providers, your Honor. And I should also say I am standing here as representative on behalf of 11 smaller service providers that have been accused of infringement as well.

Attorney Young and I have divided our time here today topically. I will be addressing the topics concerning convenience and justice based on 1407, and Mr. Young will address common questions of fact and efficiency. We'll both touch upon the Northern District of California.

Transfer to the Middle District of Florida would not be convenient for the parties. None of us is headquartered there. None of us has operations there. None of us has witnesses or documents there. That district found it had only a passing interest in this dispute. The only connection to that state in that district is the fact that some handful of members happen to live there. But, of course, transfer --

JUDGE BARBADORO: Does your view on centralization change if we don't send it there?

MR. SHANNON: Our view in the first instance is there should be no centralization at all. In the alternative, if there is -- and I can report to the Panel we have an update on

that front -- the Northern District of California is preferable to every single defendant that is appearing here today. So that is an update contrary to counsel's representation a moment ago. There will be one defendant that referenced alternative venues centrally in the United States. That was American Network Communications, Docket 65. Pursuant to your clerk's instructions this morning, I communicated with them.

JUDGE BARBADORO: I would see why you would be reluctant to support centralization to a district where the judge has already construed the patents, maybe not completely satisfied with those instructions. But apart from that, there seem to be substantial efficiency benefits to the litigants here to conduct these proceedings somewhere in a centralized basis. Are you still opposed to centralization?

MR. SHANNON: Still opposed, your Honor. The plaintiff could have and should have sued the equipment manufacturers. We are all derivatively liable, if at all.

JUDGE BARBADORO: But assuming there is infringement, you are liable and can be sued.

MR. SHANNON: If there is direct infringement by the equipment manufacturers, they might arguably be derivatively liable. But there is no connection to Florida, and each of our cases is unique. We all use different constellations of equipment and different bits of network equipment.

JUDGE BARBADORO: This could be vastly more expensive

for you guys to defend here if you're not centralized.

MR. SHANNON: Your Honor, it's going to be -- I don't think that the purpose of 1407 is to shuttle all of us in to be processed for eventual capitulation, and I don't think the Panel has ever said that.

JUDGE BREYER: I don't think it has said that.

JUDGE HEYBURN: You don't seem like the capitulating type.

MR. SHANNON: I want to touch upon this second point, justice. This Panel is charged with not only efficiency but maintaining justice. It would be unjust to deprive each of us of the opportunity to appear before a judge and argue and participate in marketing and claim construction. To send this to the Middle District is to deny us each a voice in that process. More broadly, particularly for the smaller defendants, to herd us into a joint defense group is going to deprive us of our voice. It has taken us two-and-a-half hours of conference calls, two-and-a-half hours to allocate these six minutes. Smaller defendants will not be heard. That's a problem, and it is part of 1407 and we think this Panel's remit to consider the justice to smaller defendants who are going to be essentially herded along and not heard.

With respect to convenience finally --

JUDGE BARBADORO: You think the plaintiffs will give up if you're not centralized? Is that the thinking?

MR. SHANNON: Yes, your Honor.

JUDGE BARBADORO: What it really is all about is you think that the centralization gives them efficiency advantages that they're more likely to sue a bunch of people; and -- and if you don't centralize, you think they aren't going to -- it's not worth it to them to litigate full bore, and that's the bet that's being made?

MR. SHANNON: Your Honor, you asked a straightforward question, and I'll give you a straightforward answer. Yes. As you weigh those two considerations though, our convenience, their convenience, as the Panel considers those, consider that not all inconvenience is created equal. We have customers to serve. We have employees. We have payroll to meet. We provide telephone service and internet access to real people, largely rural and -- and under-served communities. Litigation is a deep distraction for us. Its costs are fundamental to us. It is their business. I would ask you to weigh that in evaluating inconvenience.

JUDGE HEYBURN: Who is Brandywine? Do they own -- they bought these patents from somebody else?

MR. SHANNON: The term of art in the field is patent troll, your Honor.

JUDGE HEYBURN: Or patent protector perhaps?

MR. SHANNON: Various euphemisms have been drafted.

JUDGE KAPLAN: Trolls have a treasured position in

Norse folklore, do they not?

MR. SHANNON: They do, but they're not portrayed prettily in that folklore.

JUDGE HEYBURN: And so your argument is, well, everybody's entitled to purchase a patent and then protect that patent, and you're saying, yeah, they could do that, they just go to the places where there is jurisdiction and they need to do it?

MR. SHANNON: If -- one of my defendants has three employees, your Honor, three, Cactus International, three. If they want to sue a three-person company, by God, they should come do it.

JUDGE BREYER: You wouldn't be opposed to centralizing all of the litigation here in Portland, right?

MR. SHANNON: Personally?

JUDGE HEYBURN: There seems like a history. There have been a lot of cases filed and a lot of cases settled.

MR. SHANNON: Well, that's a very good point. Mr. Young will address that. The cases are settling out. The cases are being resolved. They're proceeding at pace. If we all end up in the Northern District of California, I think we all will get bound up in one big gummy --

JUDGE HEYBURN: It would be difficult to get there.

MR. SHANNON: It would, and an inconvenience to the smaller defendants. I mean, these cases cost more to defend,

much more, than these patents are possibly worth, or as a magnitude more than these patents are possibly worth. So for me to fly to California or participate in hours of telephone conferences with Mr. Young, it's just -- that's an inefficiency that, of course, the plaintiffs are counting on.

JUDGE HEYBURN: Thank you very much.

Mr. Young.

MR. YOUNG: Thank you, your Honor. Dan Young, representing the AT&T entities.

Mr. Shannon gave a very nice perspective on the smaller defendants. I'd like to give a perspective on the larger defendants regarding the in litigation for over two years.

What Brandywine is doing is using this Panel to reconstruct their case where the court in Florida, Judge Honeywell, looked at these cases initially filed and said they have different facts, different circumstances, sua sponte severed cases, and then transferred them out, us to California, Verizon to New Jersey. Now Brandywine has filed a whole bunch of cases against little defendants throughout the country and is trying then to say, oh, well, these have to be filed consolidated, centralized. Let's bring them back into Florida to the same court who looked at the case initially and sent them on their way to some more appropriate jurisdictions. These cases lack common facts, despite what Brandywine said earlier,

for basically these boilerplate complaints about the DSL service.

JUDGE BARBADORO: What do you think about the idea of letting the Florida action stay on its own since the judge has made some progress in resolving it and centralizing all of these cases somewhere other than --

MR. YOUNG: Well, your Honor, I can't speak about the Florida case. That's Century's counsel. They're currently litigating there. We're currently litigating in Northern California. We've already had infringement contentions and validity contentions. We fully believe claim construction, and we're ready to go. And we've been litigating this for two years. We've already gone through the whole transfer process to get out of Florida to the more appropriate jurisdiction where the Court found that the parties --

JUDGE BARBADORO: So if we were sort of suggesting the idea of being centralized in your district and leaving the Florida action in Florida, how do you feel about that?

MR. YOUNG: Your Honor, to make sure I understand this, you mean all of the actions other than the Century action?

JUDGE BARBADORO: Right.

MR. YOUNG: Well, I think there would be a couple of issues with that. Obviously, we prefer --

JUDGE BARBADORO: But you like that better than sending them all to Florida.

MR. YOUNG: Yes, your Honor. There's no question that's true.

JUDGE BREYER: What happened in Florida? I never quite understood what happened.

MR. YOUNG: So, your Honor, when they formally filed, Brandywine filed four actions against four defendants, AT&T, Century, Verizon and EarthLink. This is over two years ago. The Court -- when we first got the action, the Court sua sponte said these don't all belong in one case. He severed the cases. Then after it was severed, AT&T refiled a transfer motion to the Northern District of California because that's where all of the employees were, where all of the equipment was located. And the Court agreed that's the more appropriate jurisdiction. And as Mr. Shannon said, Florida only has a passing interest in this case. Verizon went to the District of New Jersey. EarthLink and Century stayed in Florida. EarthLink is settled and Verizon is settled.

And to your point earlier, they have filed now 70 additional cases. Half of them have already settled, and this is before a number of companies have even answered. So the cases are -- the trail cases are already getting resolved. So to take those remaining trail cases and to consolidate them back into our action in the Northern District of California would be inefficient because we're so far along in --

JUDGE BREYER: So you're just saying leave everything

alone.

MR. YOUNG: Yes, your Honor, because --

JUDGE BREYER: Don't touch, do no harm.

MR. YOUNG: That would be the just thing to do and the efficient thing to do because the cases are already getting resolved.

JUDGE BARBADORO: It may be efficient for some but not for others. How many district courts are involved in these cases?

MR. YOUNG: Well, of the 35 remaining cases -- I believe there are 35 remaining -- I believe there's approximately 20 jurisdictions.

JUDGE BARBADORO: So you want 20 district judges to consider the same patents and spend the time that's required to give a marketing ruling which, as you know, is one of the more challenging, time-consuming rulings you can ask a district judge to do; and you want 20 of them to do it.

MR. YOUNG: Your Honor, my view is that I think this is not going to happen. I think if there is not consolidation, the chances of having -- of the 35 remaining cases left, I think you're going to be down to under 20 in a matter of weeks; and you're going to be down to much fewer than that. My guess is, at the end of the day, you're going to have less than three or four courts considering these claims, if even that.

JUDGE KAPLAN: But if we sent everything except for

the Century case, for the sake of discussion, to Northern California, there is no reason that the judge in Northern California would have to put your case and the newly transferred cases, which are at a much earlier stage of development, on the same track. Your case could go forward on the same timetable that it otherwise would have gone forward. Isn't that right?

MR. YOUNG: Your Honor, as a practical matter, I would say no. And the reason for that is because we are literally less than two weeks away from our claim construction hearing. So it's already been fully briefed. Everything is before the Court. We have already negotiated what terms are being construed. We have different terms than the Century case. We have different issues. We have different products. We have determine terms that are being construed. I think if we could consolidate plaintiffs -- or I'm sorry -- defendants whose cases are just in their infancy, some of them have not even been answered yet, to get -- to make them get into the marketing process would certainly delay our case substantially.

JUDGE KAPLAN: Thank you.

JUDGE HEYBURN: What is the relation -- the four defendants -- the four initial defendants are those who have presumably the greatest exposure if there is infringement. Is that fair to say? I mean, other companies are smaller.

MR. YOUNG: They're certainly the largest defendants, yes, your Honor.

JUDGE HEYBURN: What is the relationship, if you can tell me, between the cases against your client, presumably the other three and -- and then what is the relation between those cases and the cases against the smaller defendants? Are they essentially derivative so that if you are liable, they are liable, and there may be some action between the two; or are they really separate?

MR. YOUNG: Your Honor, you raised two points, if I may address them both. I think that they are fundamentally -- well, the original cases were against national carriers.

JUDGE HEYBURN: Yes.

MR. YOUNG: And now the new cases are against local -- mostly local providers and resellers. So local providers have different systems to carry their products locally. And so they use different equipment, different back-end processors than obviously the national carriers. They're fundamentally different businesses, different business models. Yes, they provide DSL services, but how they do it and the mechanisms by which they do it are fundamentally different.

The issue about -- - that Brandywine's counsel raised about suppliers is interesting because, as they mentioned in the motions, Brandywine has licensed RPX who has many -- they're a patent consolidation entity. They have many members. Many of these back-end providers are licensed. So with each individual defendant with different equipment, different processes, how

that license applies to their back-end is fundamentally different. You may have a defendant that says all of my services are provided by licensed suppliers, I'm out, no claim construction necessary, we're done. Other defendants may say, well, some of our, in this case, suppliers are licensed, some are not. It applies differently among all of the defendants. So to lump them everybody together with all the different back-end processors to have this license defense, as one example, to be applied is going to -- is going to be very difficult for a judge to do and prejudicial to the individual defendants. What they need is one judge that says, here is the system, here is how the license applies to this, you're out, and then what remains goes forward. And what remains against each defendant is going to have fundamental differences with respect to claim construction because some patents may be out, some may be there. And every defendant is going to say, I don't care about these set of terms, I care about these set. But if one judge --

JUDGE BREYER: Is there any identity in the marketing hearing in front of Judge Wilkins as already set and what happened in Florida?

MR. YOUNG: There were some overlapping terms and some different terms.

JUDGE HEYBURN: All right. Thank you very much.

Mr. Devlin, you have two minutes.

MR. DEVLIN: Thank you, your Honor.

With respect to those claim construction proceedings, they were largely overlapping terms in the claim construction, and a few differences, and that's with respect to many of the defendants.

On this issue of justice and convenience, we heard on the one hand that smaller defendants aren't going to get their day in court, but at the same time, a lawyer for the smaller defendants is here talking on behalf of all of them. I don't think there is an issue of the small defendants having their say or their time in court. That happens in many cases that involve MDL's which involve individual parties in these mass tort cases or products liability cases which you have heard a lot about today.

It's not just about convenience for Brandywine or the defendants. It's about convenience for the third parties, and there are many of them, the equipment suppliers and the seven inventors on the patents collectively, and convenience for the courts. And even if the cases do compress through settlements over time, there are still going to be many, many courts involved.

In terms of the Florida case moving forward and ahead, it's important to note that both in the Florida case and the California case, the Century litigation and AT&T, they're both stayed. None of the third-party depositions have been taken,

none. There has been no expert discovery taken. In both cases discovery is still open. A first round of subpoenas went out, and we got a handful of documents in from some of the suppliers before it all shut down for this process. But all of that third-party discovery has really yet to be taken and will obtain the benefits of centralization.

And lastly, on this license issue, even that -- that involves issues of common law and fact. No one will make the argument that the providers that are defendants are direct licensees. The question is whether through their suppliers they're licensed. And so we have all of those same third-party supplier issues. And, of course, interpretation of the license itself is going to be a common issue that one judge should look at and one judge should apply, not have disparate rulings from court to court throughout the country about the scope of a license, the terms of a license, how it should be construed and how it should be applied through all of these third parties.

This case is very similar to the TR Labs case which this Panel ruled on just last year in which there were a far, far smaller number of litigants, about the same number of patents. And there was a claim construction order that had just been issued by one of the judges in the case, and this Panel cited favorably to the fact that that judge had gone through a claim construction process and consolidated the cases before that same judge.

We think the same factors are in play here. And even if this Court is somehow concerned that we're trying to game the system, we'll be happy to go to a different district so that we can have consolidation of all of these cases together and obtain the efficiencies of all of this discovery. That is what our real concern is here.

JUDGE HEYBURN: Thank you very much. Unless there are questions, we'll take the matter under submission.

(The proceeding ended at 12:05 P.M.)

CERTIFICATE

I, Maureen Lockhart-Wagner, hereby certify that the foregoing is a true and accurate transcript, to the best of my skill and ability, from my stenographic notes of this proceeding.

_______________________________
Maureen Lockhart-Wagner, RMR-CM
Court Reporter
August 1, 2013

**0**

**04105** [1] - 1:21

**1**

**1** [1] - 24:10
**11** [1] - 9:6
**11:44** [1] - 1:6
**12:05** [1] - 23:9
**1407** [3] - 9:11, 11:3, 11:20
**177** [1] - 1:21

**2**

**20** [9] - 3:20, 4:12, 4:16, 5:9, 7:13, 17:12, 17:13, 17:17, 17:21
**2013** [2] - 1:6, 24:10
**207** [1] - 1:22
**2462** [1] - 1:4
**25** [2] - 1:6, 4:15

**3**

**30** [1] - 4:15
**35** [5] - 3:20, 4:22, 17:10, 17:11, 17:20

**6**

**65** [1] - 10:6

**7**

**70** [1] - 16:18
**797-6040** [1] - 1:22

**A**

**A.M** [1] - 1:6
**ability** [1] - 24:4
**access** [1] - 12:14
**accommodate** [1] - 7:6
**according** [1] - 4:5
**accurate** [1] - 24:3
**accused** [1] - 9:7
**action** [6] - 15:4, 15:18, 15:20, 16:8, 16:23, 19:6
**actions** [3] - 8:3, 15:20, 16:6
**addition** [1] - 4:7
**additional** [1] - 16:19
**address** [4] - 3:14, 9:12, 13:19, 19:9
**addressing** [1] - 9:10
**advantages** [1] - 12:3
**ago** [2] - 10:3, 16:7
**agreed** [1] - 16:13
**agreement** [1] - 7:4
**ahead** [1] - 21:22
**allocate** [1] - 11:18
**alone** [1] - 17:1
**alternative** [3] - 6:12, 9:24, 10:4
**amenable** [1] - 3:11
**American** [1] - 10:5
**answer** [2] - 7:3, 12:9
**answered** [2] - 16:20, 18:17
**apart** [1] - 10:11
**appear** [1] - 11:12
**APPEARANCES** [1] - 2:1
**appearing** [1] - 10:2
**applied** [3] - 4:3, 20:9, 22:17
**applies** [3] - 20:1, 20:6, 20:12
**apply** [1] - 22:14
**appropriate** [4] - 7:10, 14:24, 15:14, 16:13
**arguably** [1] - 10:21
**argue** [1] - 11:12
**argument** [2] - 13:4, 22:9
**arguments** [1] - 3:4
**art** [1] - 12:21
**asserted** [1] - 3:19
**assuming** [1] - 10:18
**AT&T** [6] - 2:8, 7:20, 14:9, 16:6, 16:10, 21:24
**Attorney** [1] - 9:9
**August** [1] - 24:10

**B**

**back-end** [4] - 19:15, 19:24, 20:1, 20:8
**BARBADORO** [16] - 1:15, 5:15, 5:23, 6:11, 9:21, 10:8, 10:18, 10:25, 11:24, 12:2, 15:3, 15:16, 15:21, 15:24, 17:7, 17:13
**based** [2] - 7:15, 9:11
**basis** [1] - 10:13
**behalf** [2] - 9:6, 21:9
**belong** [1] - 16:9
**benefits** [2] - 10:12, 22:6
**best** [1] - 24:3
**bet** [1] - 12:6
**better** [1] - 15:24
**between** [5] - 8:2, 19:2, 19:3, 19:6
**big** [1] - 13:22
**bits** [1] - 10:24
**boilerplate** [1] - 15:1
**bore** [1] - 12:6
**bought** [1] - 12:20
**bound** [1] - 13:22
**Brandywine** [9] - 2:2, 3:3, 12:19, 14:14, 14:19, 14:25, 16:6, 19:22, 21:15
**BRANDYWINE** [1] - 1:4
**Brandywine's** [1] - 19:20
**BREYER** [12] - 1:16, 4:24, 5:2, 5:5, 6:22, 7:1, 11:6, 13:13, 16:3, 16:25, 17:3, 20:19
**briefed** [1] - 18:10
**briefing** [2] - 3:14, 6:21
**bring** [1] - 14:22
**broadly** [1] - 11:15
**bunch** [2] - 12:4, 14:19
**business** [5] - 4:10, 7:23, 7:24, 12:17, 19:17
**businesses** [2] - 7:22, 19:17

**C**

**Cactus** [1] - 13:10
**California** [12] - 6:19, 9:13, 10:1, 13:21, 14:3, 14:18, 15:10, 16:11, 16:23, 18:2, 18:3, 21:24
**canceled** [1] - 6:24
**capitulating** [1] - 11:7
**capitulation** [1] - 11:4
**care** [2] - 20:16, 20:17
**carriers** [2] - 19:10, 19:16
**carry** [1] - 19:14
**case** [33] - 3:12, 3:17, 3:18, 3:19, 3:25, 4:2, 4:6, 4:7, 5:14, 6:20, 6:24, 7:4, 7:5, 7:8, 8:11, 14:15, 14:23, 15:8, 16:9, 16:15, 18:1, 18:3, 18:5, 18:12, 18:18, 20:5, 21:22, 21:23, 21:24, 22:18, 22:22
**cases** [43] - 3:10, 3:13, 3:22, 3:23, 4:8, 5:17, 5:19, 6:9, 7:12, 10:23, 13:17, 13:19, 13:25, 14:16, 14:18, 14:20, 14:25, 15:6, 16:9, 16:19, 16:21, 16:22, 17:5, 17:9, 17:10, 17:20, 18:4, 18:15, 19:2, 19:4, 19:10, 19:12, 21:11, 21:12, 21:13, 21:19, 22:1, 22:24, 23:4
**category** [1] - 9:1
**central** [3] - 6:15, 6:16
**centralization** [9] - 3:12, 5:20, 9:2, 9:21, 9:24, 10:9, 10:14, 12:3, 22:6
**centralize** [3] - 6:11, 7:12, 12:5
**centralized** [5] - 10:13, 11:1, 11:25, 14:22, 15:17
**centralizing** [2] - 13:13, 15:5
**centrally** [1] - 10:5
**Century** [8] - 7:4, 7:20, 15:20, 16:7, 16:16, 18:1, 18:12, 21:24
**Century's** [1] - 15:8
**certainly** [2] - 18:18, 18:24
**CERTIFICATE** [1] - 24:1
**certify** [1] - 24:2
**Chairman** [1] - 1:12
**challenging** [1] - 17:16
**chances** [1] - 17:20
**change** [1] - 9:22
**charged** [1] - 11:10
**CHARLES** [1] - 1:16
**circumstances** [1] - 14:17
**cited** [1] - 22:23
**claim** [11] - 3:24, 6:4, 11:13, 15:11, 18:9, 20:3, 20:15, 21:2, 21:3, 22:21, 22:24
**claims** [1] - 17:24
**clerk's** [1] - 10:6
**client** [1] - 19:2
**CM** [1] - 24:9
**CO** [1] - 2:11
**coincidence** [2] - 5:23, 5:24
**collectively** [1] - 21:18
**common** [7] - 3:23, 3:24, 4:1, 9:12, 14:25, 22:8, 22:13
**communicated** [1] - 10:7
**Communication** [1] - 2:5
**COMMUNICATIONS** [1] - 1:4
**Communications** [5] - 2:2, 2:5, 2:9, 3:3, 10:6
**communities** [1] - 12:15
**companies** [5] - 7:19, 7:23, 8:3, 16:20, 18:23
**company** [1] - 13:11
**complaints** [1] - 15:1
**completely** [1] - 10:10
**complex** [1] - 8:16
**compress** [1] - 21:19
**computer** [1] - 1:24
**Computer** [1] - 2:9
**concern** [1] - 23:6
**concerned** [1] - 23:2
**concerning** [1] - 9:10
**conduct** [1] - 10:13
**conference** [1] - 11:17
**conferences** [1] - 14:4
**conflicting** [1] - 5:11
**connection** [2] - 9:18, 10:22
**consider** [3] - 11:20, 12:11, 17:14
**considerations** [1] - 12:10
**considering** [1] - 17:24
**considers** [1] - 12:11
**consistent** [1] - 4:6
**consolidate** [2] - 16:22, 18:15
**consolidated** [2] - 14:22, 22:24

**consolidation** [3] - 17:19, 19:23, 23:4
**constellations** [1] - 10:23
**construction** [10] - 6:4, 11:13, 15:11, 18:9, 20:4, 20:15, 21:2, 21:3, 22:21, 22:24
**construed** [4] - 10:10, 18:12, 18:14, 22:16
**consuming** [1] - 17:16
**contentions** [2] - 15:10, 15:11
**contrary** [1] - 10:3
**convenience** [8] - 9:11, 11:23, 12:10, 12:11, 21:6, 21:15, 21:16, 21:18
**convenient** [2] - 6:18, 9:15
**coordinate** [1] - 7:7
**coordinated** [1] - 8:5
**Corp** [2] - 2:5, 2:8
**Corporate** [1] - 2:9
**correct** [2] - 5:1, 5:4
**cost** [1] - 13:25
**costs** [1] - 12:16
**counsel** [3] - 8:24, 15:8, 19:20
**counsel's** [1] - 10:3
**counting** [1] - 14:5
**country** [7] - 3:19, 3:20, 3:21, 4:23, 5:10, 14:20, 22:15
**couple** [2] - 3:14, 15:22
**course** [5] - 4:6, 8:11, 9:20, 14:5, 22:12
**Court** [9] - 1:20, 3:8, 15:15, 16:8, 16:13, 18:11, 23:2, 24:9
**court** [6] - 14:15, 14:23, 21:8, 21:11, 22:15
**courts** [5] - 3:21, 17:8, 17:24, 21:19, 21:20
**created** [1] - 12:12
**customers** [4] - 4:11, 7:24, 8:5, 12:12

## D

**Dan** [1] - 14:8
**Dana** [1] - 2:7
**Daniel** [1] - 2:10
**Daniels** [1] - 2:3
**date** [1] - 7:8
**DE** [1] - 2:4
**deep** [1] - 12:15
**defend** [2] - 11:1, 13:25
**defendant** [7] - 7:4, 10:2, 10:4, 19:25, 20:2, 20:14, 20:16
**defendants** [34] - 3:20, 3:24, 3:25, 4:1, 4:8, 4:15, 6:6, 6:14, 6:18, 7:22, 8:25, 11:15, 11:19, 11:21, 13:9, 13:25, 14:11, 14:12, 14:20, 16:6, 18:15, 18:21, 18:24, 19:4, 20:4, 20:6, 20:11, 21:5, 21:7, 21:9, 21:10, 21:16, 22:9
**defense** [2] - 11:16, 20:8
**delay** [2] - 7:1, 18:18
**Denver** [1] - 2:11
**deny** [1] - 11:14
**depositions** [3] - 4:20, 4:22, 21:25
**deprive** [2] - 11:11, 11:16
**derivative** [1] - 19:5
**derivatively** [2] - 10:17, 10:21
**despite** [1] - 14:25
**determine** [1] - 18:14
**development** [1] - 18:4
**Devlin** [3] - 2:3, 3:5, 20:25
**DEVLIN** [15] - 3:7, 5:1, 5:4, 5:7, 5:21, 5:24, 6:14, 6:23, 7:3, 7:15, 7:18, 8:9, 8:19, 8:21, 21:1
**differences** [2] - 20:14, 21:4
**different** [28] - 3:21, 4:15, 4:23, 5:8, 5:9, 5:10, 6:8, 8:4, 8:5, 10:23, 10:24, 14:17, 18:12, 18:13, 19:14, 19:15, 19:17, 19:19, 19:25, 20:2, 20:7, 20:23, 23:3
**differently** [1] - 20:6
**difficult** [2] - 13:23, 20:10
**direct** [6] - 8:10, 8:12, 8:14, 9:3, 10:20, 22:9
**discovery** [10] - 3:11, 4:14, 4:19, 5:25, 7:7, 7:15, 22:1, 22:2, 22:5, 23:5
**discussion** [1] - 18:1
**disparate** [1] - 22:14
**dispute** [1] - 9:18
**distraction** [1] - 12:16
**District** [10] - 6:16, 6:19, 9:13, 9:14, 10:1, 11:14, 13:21, 16:11, 16:15, 16:23
**district** [8] - 9:17, 9:19, 10:9, 15:17, 17:8, 17:13, 17:16, 23:3
**divided** [1] - 9:9
**Docket** [1] - 10:6
**documents** [3] - 4:20, 9:17, 22:3
**done** [1] - 20:4
**down** [3] - 17:21, 17:22, 22:4
**drafted** [1] - 12:24
**driven** [1] - 5:25
**drove** [1] - 6:2
**DSL** [9] - 4:3, 4:4, 4:9, 4:10, 7:21, 7:23, 8:3, 15:1, 19:18

## E

**EarthLink** [2] - 16:7, 16:15
**earthLink** [1] - 16:16
**efficiencies** [2] - 7:11, 23:5
**efficiency** [4] - 9:12, 10:12, 11:10, 12:3
**efficient** [2] - 17:5, 17:7
**effort** [1] - 6:8
**employees** [3] - 12:13, 13:10, 16:12
**end** [6] - 13:20, 17:23, 19:15, 19:24, 20:1, 20:8
**ended** [1] - 23:9
**entities** [1] - 14:9
**entitled** [1] - 13:5
**entity** [2] - 8:8, 19:23
**equal** [1] - 12:12
**equipment** [15] - 4:2, 4:10, 4:11, 4:13, 4:16, 4:17, 8:2, 10:16, 10:21, 10:24, 16:12, 19:15, 19:25, 21:17
**Esq** [3] - 2:3, 2:6, 2:10
**essentially** [3] - 3:23, 11:21, 19:5
**euphemisms** [1] - 12:24
**evaluating** [1] - 12:17
**eventual** [1] - 11:4
**exactly** [1] - 8:19
**example** [1] - 20:9
**except** [1] - 17:25
**existing** [2] - 3:13, 5:12
**expect** [1] - 7:5
**expected** [1] - 6:19
**expensive** [1] - 10:25
**experience** [1] - 6:7
**expert** [1] - 22:1
**exposure** [1] - 18:22

## F

**face** [1] - 6:3
**fact** [5] - 3:22, 9:12, 9:19, 22:8, 22:23
**factors** [1] - 23:1
**facts** [2] - 14:17, 14:25
**fair** [1] - 18:23
**Falmouth** [1] - 1:21
**far** [3] - 16:24, 22:19, 22:20
**Farney** [1] - 2:3
**favorably** [1] - 22:23
**February** [1] - 7:9
**few** [1] - 21:4
**fewer** [1] - 17:22
**field** [1] - 12:21
**filed** [7] - 13:17, 14:16, 14:19, 14:21, 16:5, 16:6, 16:18
**finally** [1] - 11:23
**first** [4] - 8:8, 9:23, 16:8, 22:2
**fixed** [1] - 4:17
**Florida** [19] - 4:25, 6:24, 7:1, 9:14, 10:22, 14:15, 14:22, 15:4, 15:8, 15:14, 15:18, 15:25, 16:3, 16:14, 16:16, 20:21, 21:22, 21:23
**fly** [1] - 14:3
**focus** [1] - 3:8
**folklore** [2] - 13:1, 13:3
**foregoing** [1] - 24:3
**formally** [1] - 16:5
**forward** [4] - 18:5, 18:6, 20:13, 21:22
**four** [6] - 3:5, 16:6, 17:24, 18:20, 18:21
**frankly** [1] - 5:16
**front** [2] - 10:1, 20:20
**full** [1] - 12:6
**fully** [2] - 15:11, 18:10
**fundamental** [2] - 12:16, 20:14
**fundamentally** [4] - 19:9, 19:16, 19:19, 20:1

## G

**G4** [1] - 2:5
**game** [1] - 23:2
**general** [1] - 3:17
**geographically** [1] - 6:16
**God** [1] - 13:11
**Gray** [1] - 1:21
**greatest** [1] - 18:22
**group** [2] - 8:22, 11:16
**Group** [1] - 1:20
**guess** [3] - 5:8, 7:25, 17:22
**guidance** [2] - 5:13
**gummy** [1] - 13:22
**guys** [1] - 11:1

## H

**half** [3] - 11:17, 11:18, 16:19
**hand** [1] - 21:7
**handful** [2] - 9:19, 22:3
**happy** [1] - 23:3
**harm** [1] - 17:3
**headquartered** [1] - 9:15
**hear** [1] - 8:6
**heard** [4] - 11:19, 11:22, 21:6, 21:13
**hearing** [4] - 6:9, 6:24, 18:9, 20:20
**HEARING** [1] - 1:9
**hearings** [3] - 5:3, 5:6, 5:11
**herd** [1] - 11:16
**herded** [1] - 11:22
**hereby** [1] - 24:2
**HEYBURN** [22] -

1:12, 3:2, 7:13, 7:17, 8:7, 8:18, 8:20, 8:22, 9:1, 9:3, 11:7, 12:19, 12:23, 13:4, 13:16, 13:23, 14:6, 18:20, 19:1, 19:11, 20:24, 23:7
**history** [1] - 13:16
**home** [1] - 6:2
**Honeywell** [6] - 4:25, 5:2, 5:15, 6:3, 7:2, 14:16
**Honor** [23] - 3:7, 5:4, 5:22, 8:21, 8:24, 9:5, 10:15, 11:2, 12:1, 12:8, 12:22, 13:10, 14:8, 15:7, 15:19, 16:1, 16:5, 17:2, 17:18, 18:7, 18:25, 19:8, 21:1
**hours** [4] - 6:10, 11:17, 11:18, 14:3

## I

**idea** [2] - 15:3, 15:17
**identity** [1] - 20:19
**II** [1] - 1:12
**IKANO** [1] - 2:9
**impede** [1] - 7:2
**impetus** [1] - 5:24
**important** [1] - 21:23
**IN** [1] - 1:4
**Inc** [4] - 2:8, 2:9, 2:9
**inclined** [1] - 6:12
**inconvenience** [3] - 12:12, 12:18, 13:24
**individual** [3] - 19:24, 20:10, 21:12
**inducement** [2] - 8:13, 8:15
**inefficiency** [1] - 14:4
**inefficient** [1] - 16:24
**infancy** [1] - 18:16
**infringement** [7] - 3:17, 3:25, 9:7, 10:18, 10:20, 15:10, 18:22
**infringers** [3] - 8:10, 8:12, 8:14
**initial** [1] - 18:21
**instance** [2] - 8:8, 9:23
**instances** [1] - 8:1
**instructions** [2] - 10:7, 10:11
**intention** [1] - 5:21
**interest** [2] - 9:18, 16:14
**interesting** [1] - 19:21
**International** [1] - 13:10
**internet** [2] - 4:3, 12:14
**Internet** [1] - 2:8
**interpretation** [1] - 22:12
**interrelation** [1] - 8:2
**inventors** [2] - 6:2, 21:18
**involve** [2] - 21:11, 21:12
**involved** [3] - 3:10, 17:8, 21:21
**involves** [1] - 22:8
**issue** [7] - 3:12, 6:2, 19:20, 21:6, 21:10, 22:7, 22:13
**issued** [2] - 6:4, 22:22
**issues** [10] - 3:9, 3:23, 3:24, 3:25, 7:6, 8:13, 15:23, 18:13, 22:8, 22:12
**issuing** [1] - 5:11
**itself** [1] - 22:13

## J

**Jersey** [2] - 14:19, 16:15
**JOHN** [1] - 1:12
**joint** [1] - 11:16
**JUDGE** [57] - 1:12, 1:13, 1:14, 1:15, 1:16, 1:17, 1:18, 3:2, 4:24, 5:2, 5:5, 5:15, 5:23, 6:11, 6:22, 7:1, 7:13, 7:17, 8:7, 8:18, 8:20, 8:22, 9:1, 9:3, 9:21, 10:8, 10:18, 10:25, 11:6, 11:7, 11:24, 12:2, 12:19, 12:23, 12:25, 13:4, 13:13, 13:16, 13:23, 14:6, 15:3, 15:16, 15:21, 15:24, 16:3, 16:25, 17:3, 17:7, 17:13, 17:25, 18:19, 18:20, 19:1, 19:11, 20:19, 20:24, 23:7
**Judge** [6] - 4:25, 5:2, 5:15, 7:2, 14:15, 20:20
**judge** [16] - 5:18, 6:3, 6:19, 6:23, 10:10, 11:12, 15:4, 17:16, 18:2, 20:10, 20:11, 20:18, 22:13, 22:14, 22:23, 22:25
**judges** [3] - 5:10, 17:13, 22:22
**JUDICIAL** [1] - 1:1
**July** [1] - 1:6
**jurisdiction** [3] - 13:7, 15:14, 16:13
**jurisdictions** [2] - 14:24, 17:12
**justice** [5] - 9:11, 11:10, 11:11, 11:21, 21:6

## K

**KAPLAN** [4] - 1:17, 12:25, 17:25, 18:19
**KATHRYN** [1] - 1:13
**Kilpatrick** [1] - 2:11

## L

**Labs** [1] - 22:18
**lack** [1] - 14:25
**landscape** [1] - 3:17
**large** [1] - 7:20
**largely** [2] - 12:14, 21:3
**larger** [1] - 14:12
**largest** [1] - 18:24
**last** [1] - 22:19
**lastly** [1] - 22:7
**law** [1] - 22:8
**lawsuits** [3] - 4:23, 7:17, 7:18
**lawyer** [1] - 21:8
**learning** [1] - 6:8
**least** [1] - 4:16
**leave** [1] - 16:25
**leaving** [1] - 15:17
**left** [1] - 17:20
**legally** [1] - 8:7
**less** [2] - 17:23, 18:9
**letting** [1] - 15:4
**LEWIS** [1] - 1:17
**liability** [1] - 21:13
**liable** [9] - 8:7, 8:10, 8:12, 8:15, 10:17, 10:19, 10:22, 19:5, 19:6
**license** [7] - 20:1, 20:8, 20:12, 22:7, 22:12, 22:16
**licensed** [5] - 19:22, 19:24, 20:3, 20:5, 22:11
**licensees** [1] - 22:10
**light** [2] - 5:12, 7:11
**likely** [1] - 12:4
**lines** [1] - 8:5
**literally** [1] - 18:8
**litigants** [2] - 10:12, 22:20
**litigate** [1] - 12:6
**litigating** [3] - 15:9, 15:12
**LITIGATION** [2] - 1:1, 1:5
**Litigation** [1] - 3:3
**litigation** [5] - 7:2, 12:15, 13:14, 14:12, 21:24
**live** [1] - 9:20
**LLC** [2] - 1:4, 2:2
**LLP** [3] - 2:5, 2:7, 2:11
**local** [4] - 7:21, 19:12, 19:13
**locally** [1] - 19:14
**located** [1] - 16:12
**location** [1] - 6:16
**Lockhart** [3] - 1:20, 24:2, 24:9
**Lockhart-Wagner** [3] - 1:20, 24:2, 24:9
**look** [4] - 5:12, 5:13, 8:16, 22:13
**looked** [2] - 14:16, 14:23
**Loretto** [1] - 2:5
**lump** [1] - 20:7

## M

**magnitude** [1] - 14:2
**maintaining** [1] - 11:11
**majority** [1] - 3:21
**manufacturers** [2] - 10:17, 10:21
**MARJORIE** [1] - 1:14
**market** [6] - 5:3, 5:6, 5:7, 5:10, 5:12, 6:20
**marketing** [8] - 5:16, 5:19, 6:9, 7:6, 11:13, 17:15, 18:17, 20:19
**mass** [1] - 21:12
**matter** [3] - 17:21, 18:7, 23:8
**Maureen** [3] - 1:20, 24:2, 24:9
**MDL** [1] - 1:4
**MDL's** [1] - 21:12
**ME** [3] - 1:5, 1:21, 2:7
**mean** [4] - 6:15, 13:25, 15:20, 18:23
**mechanical** [1] - 1:24
**mechanisms** [1] - 19:18
**meet** [1] - 12:13
**MegaPath** [2] - 2:9, 7:20
**members** [2] - 9:19, 19:23
**mentioned** [2] - 7:13, 19:21
**Middle** [2] - 9:14, 11:14
**midst** [1] - 6:21
**might** [1] - 10:21
**minutes** [4] - 3:5, 11:18, 20:25
**models** [1] - 19:17
**moment** [1] - 10:3
**morning** [1] - 10:7
**most** [2] - 3:22, 8:13
**mostly** [1] - 19:13
**motion** [2] - 5:20, 16:10
**motions** [2] - 5:25, 19:22
**move** [1] - 5:19
**moving** [1] - 21:22
**MR** [46] - 3:7, 5:1, 5:4, 5:7, 5:21, 5:24, 6:14, 6:23, 7:3, 7:15, 7:18, 8:9, 8:19, 8:21, 8:24, 9:2, 9:5, 9:23, 10:15, 10:20, 11:2, 11:9, 12:1, 12:8, 12:21, 12:24, 13:2, 13:9, 13:15, 13:18, 13:24, 14:8, 15:19, 15:22, 16:1, 16:5, 17:2, 17:4, 17:10, 17:18, 18:7, 18:24, 19:8, 19:12, 20:22, 21:1
**MULTIDISTRICT** [1] - 1:1
**multiple** [1] - 8:2

## N

**national** [2] - 19:10, 19:16
**necessary** [1] - 20:4
**need** [2] - 13:7, 20:11
**negative** [1] - 6:5
**negotiated** [1] - 18:11

**Network** [1] - 10:5
**network** [1] - 10:24
**networking** [1] - 4:2
**never** [1] - 16:3
**new** [1] - 19:12
**New** [2] - 14:19, 16:15
**newly** [1] - 18:3
**next** [2] - 3:2, 7:9
**nice** [1] - 14:10
**NO** [1] - 1:4
**none** [5] - 9:15, 9:16, 21:25, 22:1
**Norse** [1] - 13:1
**Northern** [10] - 6:16, 6:18, 9:13, 10:1, 13:21, 15:9, 16:11, 16:23, 18:1, 18:2
**note** [1] - 21:23
**notes** [1] - 24:4
**number** [5] - 4:4, 4:11, 16:20, 22:20

## O

**objection** [1] - 6:17
**obtain** [2] - 22:5, 23:4
**Obviously** [1] - 15:23
**obviously** [1] - 19:16
**OF** [1] - 1:9
**ON** [1] - 1:1
**one** [18] - 3:9, 4:18, 4:21, 5:9, 10:4, 13:9, 13:22, 16:9, 17:15, 20:8, 20:11, 20:17, 21:7, 22:8, 22:13, 22:14, 22:22
**open** [1] - 22:2
**operate** [1] - 4:9
**operations** [1] - 9:16
**opportunity** [1] - 11:12
**opposed** [3] - 10:14, 10:15, 13:13
**opposing** [1] - 9:2
**order** [2] - 6:4, 22:21
**original** [1] - 19:10
**otherwise** [1] - 18:6
**ourselves** [1] - 6:1
**overlapping** [2] - 20:22, 21:3
**own** [2] - 12:19, 15:4

## P

**P.M** [1] - 23:9
**pace** [1] - 13:20
**PANEL** [1] - 1:1
**Panel** [7] - 9:25, 11:4, 11:10, 12:11, 14:14, 22:19, 22:22
**Panel's** [1] - 11:20
**part** [2] - 6:19, 11:20
**participate** [2] - 11:13, 14:3
**participated** [1] - 5:6
**particular** [1] - 5:14
**particularly** [2] - 3:11, 11:15
**parties** [13] - 3:9, 3:10, 3:16, 4:7, 4:8, 6:3, 7:8, 9:15, 15:15, 21:12, 21:16, 22:17
**partly** [1] - 4:1
**party** [7] - 4:12, 4:18, 4:19, 7:14, 21:25, 22:5, 22:11
**passing** [2] - 9:18, 16:14
**patent** [9] - 3:17, 3:22, 8:8, 12:21, 12:23, 13:5, 13:6, 19:23
**PATENT** [1] - 1:4
**Patent** [1] - 3:3
**patents** [16] - 3:18, 4:1, 4:5, 8:1, 8:12, 8:14, 8:15, 10:10, 12:20, 14:1, 14:2, 17:14, 20:15, 21:18, 22:21
**PAUL** [1] - 1:15
**payroll** [1] - 12:13
**PC** [1] - 2:3
**pending** [1] - 6:25
**people** [3] - 5:5, 12:4, 12:14
**perhaps** [1] - 12:23
**person** [1] - 13:11
**personally** [1] - 13:15
**perspective** [2] - 14:10, 14:11
**pieces** [1] - 8:2
**place** [1] - 7:11
**places** [1] - 13:7
**plaintiff** [1] - 10:16
**plaintiffs** [3] - 11:24, 14:5, 18:15
**play** [4] - 3:18, 4:5, 4:17, 23:1
**point** [3] - 11:9, 13:18, 16:18
**points** [2] - 3:14, 19:8
**Portland** [3] - 1:5, 2:7, 13:14
**portrayed** [1] - 13:2
**position** [1] - 12:25
**positive** [1] - 6:5
**possibilities** [1] - 5:9
**possibly** [2] - 14:1, 14:2
**potentially** [1] - 5:11
**practical** [1] - 18:7
**prefer** [1] - 15:23
**preferable** [1] - 10:1
**prejudicial** [1] - 20:10
**PRESIDING** [1] - 1:11
**presumably** [2] - 18:22, 19:2
**prettily** [1] - 13:3
**problem** [2] - 6:3, 11:19
**procedure** [1] - 6:21
**proceeding** [4] - 6:20, 13:20, 23:9, 24:5
**PROCEEDINGS** [1] - 3:1
**proceedings** [2] - 10:13, 21:2
**Proceedings** [1] - 1:24
**process** [5] - 11:15, 15:13, 18:18, 22:4, 22:24
**processed** [1] - 11:4
**processes** [1] - 19:25
**processors** [2] - 19:15, 20:8
**produced** [1] - 1:24
**products** [3] - 18:13, 19:14, 21:13
**progress** [1] - 15:5
**protect** [1] - 13:5
**protector** [1] - 12:23
**protocols** [1] - 4:2
**provide** [4] - 4:10, 8:3, 12:13, 19:18
**provided** [1] - 20:3
**provider** [1] - 8:17
**providers** [12] - 7:19, 7:21, 8:9, 8:18, 8:19, 9:4, 9:5, 9:7, 19:13, 19:24, 22:9
**providing** [1] - 7:23
**proving** [1] - 8:11
**provision** [1] - 4:3
**purchase** [2] - 4:11, 13:5
**purpose** [1] - 11:3
**pursuant** [1] - 10:6
**pursuing** [1] - 7:19
**pushed** [1] - 7:10
**put** [3] - 6:7, 6:10, 18:3

## Q

**questions** [2] - 9:12, 23:8
**quite** [1] - 16:4

## R

**raised** [2] - 19:8, 19:20
**RE** [1] - 1:4
**ready** [1] - 15:12
**real** [2] - 12:14, 23:6
**really** [6] - 3:11, 5:8, 6:2, 12:2, 19:7, 22:5
**reason** [3] - 5:14, 18:2, 18:8
**rebuttal** [1] - 3:5
**receive** [1] - 6:2
**received** [1] - 7:16
**recommending** [1] - 4:24
**reconstruct** [1] - 14:15
**record** [2] - 1:24, 8:25
**referenced** [1] - 10:4
**refiled** [1] - 16:10
**regarding** [1] - 14:12
**regional** [1] - 7:21
**relate** [1] - 4:2
**related** [1] - 3:14
**relation** [2] - 18:20, 19:3
**relationship** [3] - 3:9, 3:16, 19:1
**relevant** [1] - 4:13
**reluctant** [1] - 10:9
**remain** [1] - 3:19
**remaining** [4] - 16:22, 17:10, 17:11, 17:20
**remains** [2] - 20:13
**remit** [1] - 11:20
**RENDELL** [1] - 1:14
**report** [1] - 9:25
**Reporter** [2] - 1:20, 24:9
**Reporting** [1] - 1:20
**representation** [1] - 10:3
**representative** [1] - 9:6
**representing** [2] - 8:23, 14:9
**required** [1] - 17:14
**resellers** [1] - 19:13
**reset** [1] - 7:5
**residential** [2] - 4:10, 7:24
**resolution** [1] - 6:25
**resolved** [3] - 13:20, 16:21, 17:6
**resolving** [1] - 15:5
**respect** [4] - 11:23, 20:14, 21:2, 21:4
**responses** [1] - 7:16
**RMR** [2] - 1:20, 24:9
**RMR-CM** [1] - 24:9
**Road** [1] - 1:21
**round** [1] - 22:2
**rounds** [1] - 4:22
**RPX** [1] - 19:22
**ruled** [1] - 22:19
**ruling** [2] - 5:7, 17:15
**rulings** [6] - 5:11, 5:16, 5:17, 5:18, 17:16, 22:14
**rural** [1] - 12:15

## S

**sake** [1] - 18:1
**SARAH** [1] - 1:18
**satisfied** [1] - 10:11
**SBC** [1] - 2:8
**scenario** [1] - 5:14
**schedule** [1] - 7:6
**scope** [1] - 22:15
**second** [2] - 3:12, 11:9
**see** [3] - 4:14, 5:18, 10:8
**seem** [2] - 10:12, 11:7
**sell** [1] - 4:9
**send** [4] - 6:1, 6:12, 9:22, 11:13
**sending** [2] - 7:1, 15:25
**sense** [1] - 4:21
**sent** [2] - 14:23, 17:25
**separate** [3] - 4:22, 5:10, 19:7
**serve** [1] - 12:13
**served** [1] - 12:15
**service** [3] - 9:7, 12:14, 15:2
**services** [6] - 4:10, 7:19, 7:23, 8:9, 19:18, 20:3

**Services** [2] - 2:5, 2:8
**set** [5] - 4:19, 8:4, 20:17, 20:20
**settled** [4] - 13:17, 16:16, 16:17, 16:19
**settlements** [1] - 21:19
**settling** [1] - 13:19
**seven** [2] - 6:10, 21:17
**severed** [3] - 14:18, 16:9, 16:10
**SHANNON** [17] - 8:24, 9:2, 9:5, 9:23, 10:15, 10:20, 11:2, 11:9, 12:1, 12:8, 12:21, 12:24, 13:2, 13:9, 13:15, 13:18, 13:24
**Shannon** [5] - 2:6, 8:22, 8:24, 14:10, 16:14
**shut** [1] - 22:4
**shuttle** [1] - 11:3
**similar** [1] - 22:18
**single** [1] - 10:2
**six** [4] - 3:18, 6:10, 11:18
**skill** [1] - 24:4
**small** [1] - 21:10
**smaller** [12] - 7:21, 9:7, 11:15, 11:19, 11:21, 13:25, 14:11, 18:23, 19:4, 21:7, 21:8, 22:20
**somewhere** [3] - 6:12, 10:13, 15:6
**sorry** [1] - 18:15
**sort** [2] - 7:5, 15:16
**spend** [1] - 17:14
**sponte** [3] - 6:23, 14:17, 16:8
**stage** [1] - 18:4
**standards** [2] - 4:5, 4:6
**standing** [1] - 9:6
**started** [1] - 6:1
**state** [1] - 9:19
**STATES** [1] - 1:1
**States** [1] - 10:5
**stay** [1] - 15:4
**stayed** [4] - 6:25, 7:3, 16:16, 21:25
**stenographic** [1] - 24:4
**stenography** [1] - 1:24
**still** [4] - 10:14, 10:15, 21:20, 22:2
**Stockton** [1] - 2:11
**straightforward** [2] - 12:8, 12:9
**structure** [1] - 3:24
**sua** [3] - 6:23, 14:17, 16:8
**subject** [3] - 4:19, 4:22, 8:11
**submission** [1] - 23:8
**subpoenas** [4] - 4:19, 6:1, 6:2, 22:2
**substantial** [1] - 10:12
**substantially** [1] - 18:18
**sue** [2] - 12:4, 13:11
**sued** [5] - 7:25, 8:18, 8:19, 10:16, 10:19
**suggested** [3] - 6:14, 6:15, 6:18
**suggesting** [2] - 5:15, 15:16
**suggestion** [1] - 6:13
**supplier** [2] - 8:16, 22:12
**suppliers** [19] - 4:9, 4:12, 4:16, 4:18, 4:22, 7:14, 7:18, 7:22, 7:24, 7:25, 8:3, 8:13, 19:21, 20:3, 20:5, 21:17, 22:3, 22:10
**support** [1] - 10:9
**suppose** [1] - 7:25
**system** [2] - 20:12, 23:3
**Systems** [1] - 2:9
**systems** [2] - 8:4, 19:14

## T

**technical** [2] - 4:4, 4:6
**technologies** [1] - 6:9
**Technologies** [2] - 2:2, 3:3
**TECHNOLOGIES** [1] - 1:4
**technology** [2] - 4:3, 6:7
**Tel** [2] - 7:5, 7:20
**telephone** [2] - 12:14, 14:3
**term** [1] - 12:21
**terms** [11] - 3:16, 8:4, 18:11, 18:12, 18:14, 20:17, 20:22, 20:23, 21:3, 21:22, 22:16
**Texas** [1] - 6:17
**they've** [1] - 4:2
**thinking** [1] - 11:25
**third** [13] - 3:10, 4:7, 4:12, 4:18, 4:19, 6:3, 7:8, 7:14, 21:16, 21:25, 22:5, 22:11, 22:17
**third-party** [7] - 4:12, 4:18, 4:19, 7:14, 21:25, 22:5, 22:11
**three** [8] - 3:4, 5:9, 13:9, 13:10, 13:11, 17:23, 19:3
**three-person** [1] - 13:11
**throughout** [7] - 3:19, 3:20, 3:21, 4:23, 5:10, 14:20, 22:15
**Tim** [1] - 8:24
**time-consuming** [1] - 17:16
**timetable** [1] - 18:5
**timing** [2] - 3:12, 5:25
**Timothy** [2] - 2:3, 2:6
**today** [3] - 9:9, 10:2, 21:14
**together** [2] - 20:7, 23:4
**topically** [1] - 9:10
**topics** [1] - 9:10
**tort** [1] - 21:12
**touch** [3] - 9:13, 11:9, 17:3
**Townsend** [1] - 2:11
**TR** [1] - 22:18
**track** [1] - 18:5
**trail** [2] - 16:21, 16:22
**transcript** [1] - 24:3
**TRANSCRIPT** [1] - 1:9
**Transcript** [1] - 1:24
**transfer** [4] - 9:14, 9:20, 15:13, 16:10
**transferred** [2] - 14:18, 18:3
**treasured** [1] - 12:25
**trial** [1] - 7:8
**troll** [1] - 12:22
**Trolls** [1] - 12:25
**true** [2] - 16:2, 24:3
**trying** [2] - 14:21, 23:2
**two** [15] - 3:5, 3:8, 5:8, 8:25, 11:17, 11:18, 12:10, 14:12, 15:12, 16:7, 18:9, 19:6, 19:8, 20:25
**two-and-a-half** [2] - 11:17, 11:18
**type** [2] - 8:8, 11:8

## U

**ultimately** [1] - 4:15
**under** [3] - 12:15, 17:21, 23:8
**under-served** [1] - 12:15
**understood** [1] - 16:4
**unique** [1] - 10:23
**United** [1] - 10:5
**UNITED** [1] - 1:1
**universe** [3] - 4:17, 8:16, 8:17
**unjust** [1] - 11:11
**unless** [1] - 23:7
**up** [5] - 3:13, 8:4, 11:25, 13:21, 13:22
**update** [2] - 9:25, 10:3

## V

**validity** [2] - 3:23, 15:11
**VANCE** [1] - 1:18
**various** [1] - 12:24
**vast** [2] - 3:21, 7:11
**vastly** [1] - 10:25
**venues** [1] - 10:4
**Verizon** [4] - 14:19, 16:7, 16:15, 16:16
**Verrill** [1] - 2:7
**view** [3] - 9:21, 9:23, 17:18
**violations** [1] - 8:8
**voice** [2] - 11:14, 11:17
**VRATIL** [1] - 1:13

## W

**Wagner** [3] - 1:20, 24:2, 24:9
**wait** [1] - 5:17
**ways** [2] - 6:5
**weeks** [2] - 17:21, 18:9
**weigh** [2] - 12:10, 12:17
**West** [1] - 2:9
**whole** [2] - 14:19, 15:13
**Wilkins** [1] - 20:20
**Wilmington** [1] - 2:4
**witnesses** [1] - 9:17
**worst** [1] - 5:14
**worth** [3] - 12:6, 14:1, 14:2

## Y

**year** [2] - 7:9, 22:19
**years** [3] - 14:13, 15:13, 16:7
**young** [2] - 9:11, 14:7
**YOUNG** [15] - 14:8, 15:7, 15:19, 15:22, 16:1, 16:5, 17:2, 17:4, 17:10, 17:18, 18:7, 18:24, 19:8, 19:12, 20:22
**Young** [5] - 2:10, 9:9, 13:19, 14:4, 14:8